## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SHAWN WALDEN,                        )
                                     )
              Plaintiff,      )
                                     )
v.                                   )     Case No. CIV-23-1075-PRW
                                     )
THE CITY OF DUNCAN, OKLAHOMA,        )
et al.,                              )
                                     )
             Defendants.     )

## ORDER

Before the Court are Defendants City of Duncan's Motion for Summary Judgment (Dkt. 29) and Officer Christian Archer's Motion for Summary Judgment (Dkt. 30). This matter is fully briefed, and for the reasons that follow, the Motions (Dkts. 29 and 30) are **GRANTED**.

### *Background*

This is a false arrest and wrongful detention claim brought under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act. On December 30, 2022, Plaintiff Shawn Walden, an Indian, was arrested by Christian Archer, a City of Duncan police officer, in Indian Country for Actual Physical Control and Carrying Firearms While Under the Influence. Plaintiff essentially contends that his arrest was improper because the field sobriety test Officer Archer administered was incomplete and error-ridden.

Plaintiff filed suit against Officer Archer and the City on November 27, 2023, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. He further seeks

damages from the City, alleging a failure to train Officer Archer, under Oklahoma law. In Plaintiff's Response to City of Duncan's Summary Judgment Motion (Dkt. 52), Plaintiff abandons his claims under 42 U.S.C. § 1983 against the City.[1] Plaintiffs Archer and the City of Duncan now seek summary judgment pursuant to Federal Rule of Civil Procedure 56(a).

### *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[2] The Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[3] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[4] A fact is "material" if, under the substantive law, "it is essential to the proper disposition of the claim."[5] A dispute "is

---

[1] Plf.'s Resp. (Dkt. 52), at 15.

[2] *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Adler*, 144 F.3d at 670.

'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[7] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts."[8] Instead, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9]

## *Analysis*

To level-set, it is "a jurisdictional requisite for a § 1983 action" that the defendant officer acted "under color of state law."[10] State officers do not have "authority" derived

---

[6] *Id.*

[7] Fed. R. Civ. P. 56(c)(1); *see Celotex Corp.*, 477 U.S. at 322.

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[9] *Anderson*, 477 U.S. at 251–52.

[10] *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).

from the states "to enforce [state] laws over Indians on Indian land."[11] Both Officer Archer and the City argue that Archer was not acting under color of state law at the time of Walden's arrest. All parties agree Walden is an Indian, the arrest occurred on Chickasaw Nation lands, and Officer Archer held a Chickasaw Lighthorse Special Law Enforcement Commission at the time of the arrest. Further, the Chickasaw Reservation remains Indian Country.[12] Defendants instead assert that Officer Archer was acting under color of tribal law.

Plaintiff asserts that Defendants have waived the issue as to whether Officer Archer was acting under color of state law by failing to properly develop the claim, but the Court finds that to be incorrect. The Court will first determine if the jurisdictional requisite for the surviving § 1983 action has been met.

"The two elements of a Section 1983 claim are (1) deprivation of a federal protected right by (2) an actor acting under color of *state* law."[13] The Tenth Circuit has held that "[a] § 1983 action is unavailable 'for persons alleging deprivations of constitutional rights under color of tribal law.'"[14] The whole ballgame on this question comes down to whether Officer Archer, clad in a Duncan Police Department uniform, driving a Duncan P.D.

---

[11] *Ross v. Neff*, 905 F.2d 1349, 1353 (10th. Cir. 1990).

[12] *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 633–643 (2022) (noting that the Oklahoma Court of Criminal Appeals reaffirmed the recognition of, among several tribes, the Chickasaw) (citations omitted).

[13] *Schaffer v, Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (citation omitted) (emphasis added).

[14] *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) (citation omitted).

cruiser, responding to a dispatch from Duncan P.D., was acting under color of state or tribal law when he arrested Walden.

The Court finds that Archer was incapable of wielding the power of state law against Walden.[15] Archer's authority over Walden flowed from a grant from the Chickasaw Nation. What's more, the Court has been incapable of finding any case law that stands for the proposition that an officer is capable of acting under state law and tribal law simultaneously.[16] Any authority that Archer exercised over Walden was derived from tribal law, rather than state law, and it is well-established that "[a] § 1983 action is unavailable for persons alleging deprivation of constitutional rights under color of tribal law."[17]

Thus, the question then becomes one of determining whether Officer Archer's arrest of Walden was done under color of state law, though he had no legal authority to arrest him under state law, or tribal law. "'The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the [defendant] is clothed with the authority of state law.'"[18] Here, Officer Archer plainly fails to satisfy *both* prongs of this conjunctive test. Archer exercised tribal power when he effectuated the arrest upon Walden, for he was

---

[15] *See McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020).

[16] *See Fernandes v. City of Broken Arrow*, Case No. 16-CV-0630-CVE-FHM, 2017 WL 471561, at *3 (Feb. 3, 2017) (noting that there is no caselaw that supports the argument "that an individual can act under color of state and *federal* law simultaneously[.] (emphasis added)).

[17] *Burrell*, 456 F.3d at 1174.

[18] *Ouart v. Fleming*, No. CIV-08-1040-D, 2010 WL 1257827, at *7 (W.D. Okla., Mar. 26, 2010) (quoting David v. City & County of Denver, 101 F.3d 1344, 1353 (10th Cir.1997)).

5

only able to do so by virtue of his Chickasaw Lighthorse Special Law Enforcement Commission.[19] True enough that Officer Archer took Walden to the Stephens County Jail, where he was later charged with Actual Physical Control in violation of 47 O.S. § 11-902 and Carrying Firearms While Under the Influence in violation of 12 O.S. § 1289.9.[20] But he was also charged under the Chickasaw Nation Tribal Code.[21] A useful syllogism would be to consider whether Walden's arrest itself could be challenged in a criminal case as being invalid because it was made by a police officer clad in a Duncan Police Department uniform, driving a Duncan P.D. cruiser, arresting Walden for a violation of state law, all in Indian country. If that arresting officer were cross-deputized by the appropriate tribal government, there is no question that any eventual conviction by the appropriate tribal court would be valid. Why? Because whether Walden—and the arresting officer—would have known it or not, the arrest would have been made under the auspices of a grant of authority by the tribal government. This retrospective analysis acknowledges a legal truth *at the time of the arrest.* There is no retrospective legal process that would need to be done to legitimize the original arrest. It was already legal under tribal law.

Plaintiff argues that "[w]here state action is concerned, the proper inquiry is whether, at the time of the alleged constitutional violation, the defendant was a state

---

[19] *See Ross*, 905 F.2d at 1353 ("The Supreme Court has expressly stated that state criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians ... and victimless crimes by non-Indians.'" (citing *Solem v. Bartlett*, 465 U.S. 463, 465, n. 2 (1984)).

[20] Mot. Summ. J. (Dkt. 30), ¶14.

[21] *Id.*

actor."[22] The Court agrees, and determines that in this case, Officer Archer was not a state actor at the time of *this* alleged constitutional violation. He was a tribal officer for purposes of Walden's suit.

Finally, "Indian country is subject to exclusive federal or tribal criminal jurisdiction."[23] The parties agree that the arrest occurred in Indian territory. After *McGirt* and *Castro-Huerta*, Plaintiff had ample notice that any arrest as to him by a state officer would need to be affected under color of tribal law to be valid. Plaintiff does not state what would cause Officer Archer to have acted under color of tribal law in this case—would merely a uniform from the Chickasaw Nation have been enough? Or perhaps if Officer Archer had first known at the beginning of the encounter that Walden was an Indian? The Court finds it hard to believe that such a prerequisite is needed to trigger Officer Archer's acting under color of tribal law.

Plaintiff attacks the Magistrate's Order in Defendant's Notice of Supplemental Authority (Dkt. 68) for not addressing the applicability of *Bressi v. Ford*,[24] but Plaintiff fails to consider how different those cases are. In the Magistrate's Order, the issue in the case is that the arresting officers were only able to exercise legal power over Indian plaintiff Barrick because of the grant of authority from the relevant tribe.[25] *Bressi* is a case about a *non*-Indian who was arrested by tribal officers authorized to exercise both tribal *and* state

---

[22] *How v. City of Baxter Springs*, 217 Fed. Appx. 787, 794 (10th Cir. 2007).

[23] *Ross*, 905 F.2d 1349, 1352 (10th Cir. 1990) (citing 18 U.S.C. § 1152).

[24] 575 F.3d 891 (9th Cir. 2009).

[25] *Barrick v. Board of County Commissioners of McCurtain County* (Dkt. 68, Ex. 1), at 14.

law.[26] Of course the tribal officers were operating under color of state law. The question here is whether an officer is acting under color of state law when the plaintiff is *immune* to the particular exercise of state law in the situation in question.

Because of the jurisdictional bar that prevents Plaintiff from recovering against Defendants under 42 U.S.C. § 1983, the Court does not address the other defenses put forward by Officer Archer.

Further, because Officer Archer was acting under color of tribal law at the time of the arrest, his actions fall outside the reach of the Oklahoma Governmental Tort Claims Act, which provides that "[t]he state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions."[27] The Chickasaw Tribe is not a "political subdivision" of Oklahoma and thus Officer Archer's actions are beyond the scope of the Governmental Tort Claims Act.

### *Conclusion*

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motions for Summary Judgment (Dkts. 29 and 30). Plaintiff and Defendants' remaining pretrial motions (Dkts. 58, 59, and 66) are **DENIED AS MOOT**. A final judgment will follow.

---

[26] *Bressi*, 575 F.3d at 893.

[27] 51 O.S. § 152.1.

**IT IS SO ORDERED** this 22nd day of September 2025.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE